24 C.C.P.A. (Patents)

## In re BROWN.
### Patent Appeal No. 3787.

Court of Customs and Patent Appeals.
March 29, 1937.

J. Preston Swecker, of Washington, D. C. (Maxwell E. Sparrow, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

### GRAHAM, Presiding Judge.

The appellant made application to the United States Patent Office for a patent upon certain "new and useful improvements in Automatic Contour Shaping Fixture." The apparatus for which patent was sought was a device by which objects could be ground into a shape identical with a form which it was desired to duplicate, particularly small objects of glass, like watch crystals, or lenses of optical devices, curved or straight in cross-section. A fairly good idea of the device may be had by examination of two claims which are thought to be typical, namely, 43 and 47, which are as follows:

"43. In a contour shaping machine, the combination with a pattern, and work holder operable therewith, of a shaper and a gauge in axial alinement, a carriage for supporting, and moving in a fixed path said pattern and said work holder toward and from said shaper and said gauge, means for rotating said work holder and said pattern, said gauge having a working surface of varying concentric diameters against which the said pattern may ride, said working surface being concentric with the shaping surface of said shaper, means to micrometrically longitudinally adjust said gauge and said pattern relative to each other whereby the peripheral contour of said pattern is accurately reproduced in direct proportion on a piece of work, which may be held by the work holder and shaped by the shaper, at all points of said relative adjustment, and means for lockingly maintaining said adjustment."

"47. In a contour shaping apparatus, the combination with a pattern and a work holder operable therewith, of a gauge against which the pattern may ride, and a shaper, the working surface of said gauge and of said shaper being concentric and said gauge and said shaper being in axial alinement, whereby the concentricity between said working surfaces are constantly maintained, a carriage for supporting, and moving in a fixed path said pattern and said work holder towards and from said shaper and said gauge, means for rotating said work holder and said pattern, means to longitudinally vary the working surface of the gauge relative to the working surface of the shaper, and means for locking the gauge in any position."

The Board of Appeals, in its decision, described the device as follows: "The invention relates to a contour-shaping machine. As shown in Fig. 1, it includes a stationary standard 77 on which a frusto conical gauge 83 is mounted for axial adjustment. A rotatable grinding wheel or shaper 85 concentric with the gauge is mounted adjacent to it. A work-holding frame is pivoted on a standard at one side of the gauge and shaper so that it can be swung toward and away from them. This frame carries a work-holder 73 and 74 and a pattern 87 on the same shaft as the work-holder. When the work-holder frame is swung toward the shaper 85, the pattern 87 engages gauge 83. As shown in Fig. 3a, the pattern and work-holder are relatively axially adjustable. Likewise, the gauge 83 is axially adjustable with respect to the shaper. The adjusting means include micrometric screws."

Some claims were allowed, but claims 43 to 47, inclusive, were denied by both the Examiner and Board of Appeals. A petition for rehearing was filed and denied, and the case comes here for review. The Examiner cited the following reference in his rejection: Gubbins (British) No. 3265, July 10, 1882; Besson et al., 374,332, December 27, 1887; Bader, 737,313, August 25, 1903; Long, 686,676, November 12, 1901.

The Board of Appeals cited the same references, but the record does not contain the Bader and Besson et al. patents, so that the court has not had the benefit of an inspection of the same. However, their application to the case is not left in doubt by the record. The Examiner was of the opinion that claims 43 to 47, inclusive, were not patentable over the patent to Gubbins, "especially in view of patent to Long or Bader or Besson et al. as applied above to claims 28 and 38 to 40 inclusive." As to this part of the case, the Examiner states: "It seems that the definition of the work holder in these claims (in claim 43, line 2 and claim 44, line 2 for instance) can be read only on applicant's rotatable work clamping heads 49 and 57 and spindles 48 and 56 because these claims also call for means for rotating the work holder. The rocking frame 24, 27 etc. for supporting the work holding and rotating spindles 48 and 56 and heads 49 and 57 is not a part rotated by the work holder rotating means and probably cannot be considered to be included in the definition of the work holder. The rocking frame is not otherwise included in these claims and the statement in claim 43, lines 3–5 for instance, and the other claims to the effect that the pattern and work holder are movable in a fixed path relative to the shaper and gauge claims the function of the rocking frame without claiming the rocking frame as a tangible structural element. Therefore, these claims do not appear to require the Gubbins patent to show a support for work holder S of that patent."

As to the swingable unit upon which the work holder is mounted, the Board of Appeals says: "Some of the appealed claims recite that the work-holder and the pattern are mounted on a swingable unit. The Gubbins patent shows the work-holder and pattern connected together as a unit, and this unit is moved toward and away from the shaper. Since it is old in other patents cited to mount the work-holder and the pattern on a swingable frame, we believe that no invention is involved in making this change in Gubbins."

These, therefore, constitute the positions of the Patent Office tribunals upon the question of the swingable arm for the work unit.

Throughout the prosecution of this application, the appellant has insisted that he has developed a new and valuable feature; namely, the micrometric adjusting means which his device contains. But little attention has been given to this matter by the Patent Office tribunals. The Board of Appeals, on its part, says the following: "Applicant's main argument is that Gubbins does not show micrometric adjusting means for the gauge O and locking means for it in any adjusted position. If the screw threads in the patent are made with sufficiently small pitch, it is evident that the gauge O can readily be adjusted to any degree of accuracy necessary. Hence, the patent has micrometric adjusting means. Apparently, the friction between the screw threads is depended upon in Gubbins to hold the gauge in its adjusted position so it will not shift. If the threads fit tight, this will be sufficient to retain the gauge in adjusted position. If an additional set screw be desired, it can be added to the gauge hub and thus hold the gauge more securely. We do not regard this as involving invention."

It will be observed that claim 43, which is hereinbefore quoted, recites, in part: "* * * means to micrometrically longitudinally adjust said gauge and said pattern relative to each other * * * and means for lockingly maintaining said adjustment." This language is contained in all the rejected claims, except claim 47.

We are told by the Solicitor for the Patent Office that the patents which are absent from this record, namely, Bader and Besson et al., have to do with the swingable arm. The patent to Long is along the same line. We must, therefore, rely upon Gubbins for any showing of the micrometric adjustment. If it is to be assumed that there is no invention in arranging a swingable arm, as the Patent Office presumes, we are nevertheless convinced that it is patentable to arrange a micrometric adjustment combined with a means of locking the same so that the piece, when once adjusted to nicety and with precision, can be held in this place during the entire operation.

Gubbins shows no such arrangement. An inspection of his figures discloses that the vibration of the parts will very readily cause a loosening and a changing of position, so that a piece of work which is fastened within the holder will become misplaced, and the gauge and work which is held against the grinding wheel and its pattern will readily become misplaced and misshapen. In fact, it is quite impossible to understand how the best of work can be done upon such a device. The appellant here, however, has perfected a device by which, with the greatest precision, the work can be adjusted, and with which it can be held firmly while the subsequent proceedings are continuing.

In our opinion, the appellant has made a contribution to the art, and the Board of Appeals was in error in refusing the appellant's claims 43, 44, 45, and 46.

Claim 47, however, is not in the same category. So far as it appears, this claim does not contain the micrometric, in combination with the adjustment, features, and the Board of Appeals did not err in refusing to allow it.

The decision of the Board of Appeals of the United States Patent Office is modified, its decision as to claim 47 being affirmed, and its decision as to claims 43, 44, 45, and 46 being reversed.